# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Thomas Sander, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE MOTIONS TO** |
| | ) | **COMPEL (DOC. NOS. 55 & 56)** |
| vs. | ) | |
| | ) | |
| The City of Dickinson, North Dakota, | ) | |
| Kylan Klauzer, Jeremy Moser, Terry | ) | Case No. 1:15-cv-72 |
| Oestreich, and Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is (1) plaintiff's motion seeking an order requiring that the City of Dickinson ("City") either produce specific documents and other intangible items or admit that it failed to preserve the items (Doc. No. 55), and (2) plaintiff's motion to compel a supplemental answer to plaintiff's Interrogatory No. 5 for failure to preserve what is termed here as the "J.G. document." (Doc. No. 56).[1]

In this action, plaintiff has sued the City of Dickinson as well as several of its current and former police investigators for a variety of claims arising out of their having arrested plaintiff and causing him to be charged with committing arson of a local private Catholic school of which he was then the principal. After the state district court suppressed plaintiff's confession on grounds of one

---

[1] This matter initially came to the attention of the court when the undersigned conducted a telephone conference pursuant to the court's local rule that requires a telephone conference with a magistrate judge before any motion to compel discovery is filed. After it became apparent that defendants had asserted a number of boilerplate responses to their written discovery requests that muddied the water with respect to what their actual responses were, the court issued an order giving defendants an opportunity to clean this up. The City argues the court should not consider the present motions, contending that plaintiff's counsel should have arranged for another telephone conference with the undersigned to discuss any deficiencies after it revised its responses. The court disagrees. The court's recollection is that it advised that plaintiff could file a motion to compel if it was dissatisfied with defendants' amended responses. But, even if the court's recollection is wrong, the court in its discretion can waive the requirements of the local rule and get to the heart of the matter.

or more of defendants having violated Miranda, the State's Attorney dismissed the charge, concluding there was not sufficient evidence to proceed. Plaintiff contends that his confession was the subject of undue coercion and that, prior to his confession having been wrongfully coerced, he had steadfastly maintained his innocence in response to questioning by the City's investigators.

**I.      DISCUSSION**

    **A.      Oestreich emails**

During the time period relevant here, defendant Oestreich was a detective for the Dickinson Police Department. He has since become the Sheriff for Stark County.

In reporta authored by Oestreich while working as a detective for the City, he clearly indicated he was recipient of several emails while working on the investigation that is the subject of this case. In one report, he stated:

> On Monday afternoon March 3, 2014, I met with Monsignor Schumacher and the Dickinson Catholic School Board at St. Wenceslaus Rectory. I was asked to come to their meeting as they had obtained some additional information. Mr. Holgard received information concerning a tweet message from David Perkorny. Fr. Hochhalter also received a message concerning a tweet message Cole Wilhelm it had made. *I had these messages e-mailed to me. Copies of these messages were given to Det. Moser.*

(Doc. No. 53-1, p. 29) (italics added). In another report, he wrote:

> On Monday June 2, 2014 I was asked to follow up on an e-mail which Mrs. Heather Schieno mentioned in her interview with Det. Moser. Mrs. Schieno told of an email which Thomas Sander sent to Trinity High School Staff on Sunday night March 2, 2014 at approximately 2358 Hrs. She stated she remembered getting this email.
>
> On Monday June 2, 2014 I contacted Mrs. Schieno who stated she does not have this e-mail saved. She stated that Mrs. Janel Schiff had this e-mail saved. Mrs. Schieno stated she would contact Mrs. Schiff and have her forward a copy of this e-mail to me. *A short time later I received an e-mail in which Mrs. Schiff forwarded the email in question to me.* This e-mail is dated March 3, 2014 with a time sent as 1246 AM.

(Doc. No. 53-1, p. 47) (italics added). Plaintiff contends the City has not produced the emails referenced in the Oestreich reporst in response to his document requests and demands that the City

2

either produce the referenced emails or acknowledge it has failed to preserve them and respond to plaintiff's Interrogatory No. 5. Plaintiff's Interrogatory No. 5 reads:

> **INTERROGATORY NO. 5:** If any documents or categories of documents responsive to any of the following Requests for Production were formerly within your possession, custody, or control but have been lost, misplaced, destroyed, deleted, transferred, conveyed, leased, or for any reason are no longer available for production, separately state the following with respect to each document:
>     a.    The author of the document;
>     b.    The address of the recipient of the document;
>     c.    The nature of the document with sufficient particularity to enable it to be retrieved from other sources;
>     d.    The date the document was created by or received by Defendants;
>     e.    The number of pages constituting the whole document;
>     f.    The reason such document is no longer available for production;
> If such document was destroyed or disposed of, state (i) the date of such destruction or disposition; (ii) the identity of each person who participated in or authorized such destruction or disposal.

(Doc. No. 55-3, p. 3).

The City contends is has not been able to ascertain whether the emails were ever in the City's possession in part because its IT person has not been able to locate them and in part because Oestreich is no longer a City employee. The City faults plaintiff for not inquiring about this subject when Oestreich was deposed.

The court agrees with the City that it does not have to produce the emails if it does not have them[2] and that it does not have to supplement its answer to Interrogatory No. 5 if it continues to take the position that it cannot determine whether the referenced emails were ever in its possession - as implausible as that appears to be. A factfinder will be entitled to draw his or her own conclusion from the Oestreich reports and the City's claim it does not have the referenced emails. Most likely, that will be that, regardless of any email retention policy, the City failed to preserve information

---

[2] If the court is wrong in its understanding that the City does not have the emails, then the City should produce them forthwith.

material to a criminal investigation (just as it failed to preserve other material information) with whatever consequences, if any, this may have with respect to the claims now before the court.[3]

That being said, the court will permit plaintiff to propound either an additional interrogatory or one or more requests for admission that are directed to nailing down *under oath* the City's apparent position that it cannot determine whether the emails in question ever came into its possession and the fact it does not now have them. The court concludes that, in this situation, plaintiff should not be required to call multiple witnesses at trial (Oestreich, Moser, the police chief, and possibly an IT person) just to establish that the City does not have any of the emails referenced in the Oestreich reports and that the City is not certain whether they ever came into its possession.[4]

### 2. Recording of J.G.'s phone call to law enforcement

The City's investigation reports clearly reflect that three calls were made to the Dickinson Law Enforcement Center by a person believed to be J.G.[5] For example, city police investigator Moser stated the following in one of his reports:

> [J.G.] called the Dickinson LEC on three separate occasions, using a disguised phone number on two occasions, stating if Sander was released, he would confess to the crime of Arson. The first phone number used was a landline from San Francisco, CA (715) 203-1884. The second phone number used was landline from Grand Forks, ND (701) 203-1884. The suspect used an online application to disguise the call. This is known as "spoofing." The third phone call [J.G.] placed was from courtesy phone from the West River Community Center.

(Doc. No. 55-6, p. 3).

---

[3] There is no evidence that Oestreich's statements about having received the emails were pure fiction or that he was somehow acting outside the scope of his employment when he received them. The same is true with respect to the any email forwarded by Oestreich to Det. Moser.

[4] Plaintiff and the City can also enter into a formal stipulation with respect to these points in lieu of plaintiff propounding additional discovery and the City responding.

[5] J.G. was a juvenile at the time.

4

Plaintiff contends that the City has produced only the first and the third calls. As with the Oestreich emails, plaintiff contends that the City must either produce the second call or acknowledge it failed to preserve it and answer Interrogatory No. 5.

The City's response again appears to be that it has been unable to confirm whether there ever were recordings of phone calls beyond the ones that it produced, much less whether it ever possessed them.[6] The City may also be contending it does not control the dispatch center to which the calls were made.[7]

Again, the court will not require a supplemental answer to Interrogatory No. 5 if the City's position is that it cannot determine whether calls were made and recorded beyond the two it apparently turned over and whether it ever possessed a recording of what plaintiff has referred as to as the "second call." However, the City and its individual defendants will have to live with the fact that their own reports indicate that three phone calls were made, the apparent policy of all calls being recorded, and the failure of City law enforcement as the lead investigating agency into the suspected arson to gather and preserve this obviously relevant evidence.[8]

---

[6] The court assumes from what the City has represented that it has recording of only two phone calls and that those have been both been turned over. If the City has in its possession or if it reasonably has access to a third call because of its use of the Law Enforcement Center's dispatch, then it should produce the recording of that call forthwith.

[7] It is not clear how the City obtained the calls it did turnover and why it would not have access to all of the calls that were made. This is particularly true *if* the City relies upon the dispatch that is done by the Dickinson Law Enforcement Center for its own dispatch, which, at this point, the court has no knowledge of one way or the other. If there are future proceeding in this matter, these questions will likely be "grist for the mill."

[8] For all we know now, J.G. may have provided additional detail in the phone call, for which no recording was turned over and apparently does not now exist, about his purported involvement in the suspected arson that would have tended to either confirm or cast doubt upon whether he was the arsonist. This is not implausible given J.G.'s other statements and conduct.

### 3. **Plaintiff's drawings**

Plaintiff has executed an affidavit in which he states he recalled making a drawing of a fire alarm panel during a March 3, 2014, interview conducted by City Det. Moser and another drawing of file cabinets within a vault during an interview conducted by City Detectives Klauzer and Oestreich on March 4, 2014. He also stated that he was able to confirm what he recollected by reviewing the videos of the two interviews. The court has reviewed the videos. Clearly, two separate drawings were made. Also, Det. Moser stated in his report of the March 3 interview: "Sander drew on a piece of paper where the vault was and where the fire started." (Doc. No. 53-1, p. 10).

Similar to the above discovery requests, plaintiff demands that the City produce all of the drawings made by plaintiff, including the March 3 and March 4 drawings, or admit it failed to preserve the drawings it cannot produce and answer Interrogatory No. 5.

The City has responded by stating that it only has the drawing that was made on March 4 and that it does not have any drawing from the March 3 interview. While the City concedes there was a drawing made by plaintiff during the March 3 interview (which was conducted by Det. Moser who was and still is an City employee), it claims the drawing never came into its possession, custody, or control. But, even if the drawing was simply left behind in the interview room after the interview was terminated as the City seems to suggest, it is absurd for the City to contend it was never in the City's control or custody, even if only temporarily, as the user of the interview room.

In fact, when it was clear that Oestreich failed to preserve critical drawings made by J.G. under similar circumstances, the City did provide a supplemental answer to Interrogatory No. 5. This belies any notion that drawings made during the course of an interview by police detectives

would not at some point be in the possession or control of the City's law enforcement officers.[9]

The court will require the City to supplement its answer to Interrogatory No. 5 with respect to the March 3 drawing and answer it the best it can under oath.

### 4. **J.G. document**

J.G. also confessed to starting the fire in question and then recanted. The video of his interview clearly shows that J.G. had in his hand and was reading from a document that had writing on it. Plaintiff contends the document most likely was a statement taken from J.G. prior to the commencement of the interview. Plaintiff contends this is a logical assumption since it was a common practice for the City's detectives to obtain written statements from witnesses prior to conducting interviews. Plaintiff demands that the City produce the document or acknowledge that if failed to preserve it and respond to Interrogatory No. 5.

The City objects to having to supplement its answer to Interrogatory No. 5 with respect to this document because it cannot determine whether it ever possessed or controlled it, much less whether it had anything to do with this case. More specifically, the City asserts: (1) it is impossible to tell from the video what exactly the document is even though it admittedly bears some resemblance to the City's form for taking witness statements; and (2) other law enforcement agencies used the same interview room and occasionally would leave documents and other written material behind.

After reviewing the video in question, the conclusion that the undersigned would reach is

---

[9] The City states in its brief with respect to the March 3 Sander drawing: "it would be an extraordinary expansion of the plain meaning of that interrogatory to read it to require the City to account for every inconsequential piece of paper that any police officer happens to interact with in the court of an investigation." If the characterization of a drawing made by the City prims suspect as being "inconsequential" is counsel's, then it is nothing more than "attorney speak." However, if it is the characterization of Det. Moser or the other defendants, then it is symptomatic of their failures to preserve other relevant evidence.

that the document in question was either J.G.'s own written statement or a written statement from another witness that was provided to J.G. to review, notwithstanding the "amnesia" of the City's detectives with respect to the document.[10] That being said, the court cannot eliminate the possibility the document was left behind from an interview conducted by another law enforcement agency. While under other circumstances, the court would consider that to be implausible since any careful investigator would not have placed J.G. in an interview room with other papers laying around unless it was for a reason, the sloppiness of the procedures employed by the City's detectives in their pursuit and handling of the evidence in this case makes it somewhat more likely.

5. **Requests for attorney's fees and costs**

Both sides request attorney's fees and costs. The court declines to award any attorney's fees and costs, however, since neither party completely prevailed and since neither party appears to have been acting in bad faith.

**II.  ORDER**

Based on the foregoing, plaintiff's motions to compel at Doc. Nos. 55 and 56 are **GRANTED IN PART** and **DENIED IN PART**. The City shall within fifteen (15) days supplement its answer to plaintiff's Interrogatory No. 5 with respect to the drawing made by plaintiff during his March 3, 2014 interview. Also, the court will permit plaintiff to propound either an additional interrogatory or additional requests for admissions with respect to the "Oestreich emails" in accordance with the discussion set forth above. The remainder of the requests for relief are denied.

---

[10] When plaintiff and another witness were interviewed on March 3 just after the fire, Det. Moser had both fill out a written statement first. (Doc. No. 53-1, p. 9).

**IT IS SO ORDERED.**

Dated this 24th day of April, 2017.

                                                */s/ Charles S. Miller, Jr.*
                                                Charles S. Miller, Jr., Magistrate Judge
                                                United States District Court