**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

Thomas Sander,                              )
                                            )
                    Plaintiff,              )          **ORDER GRANTING DEFENDANT**
                                            )          **TERRY OESTREICH'S MOTION FOR**
        vs.                                 )          **FOR SUMMARY JUDGMENT**
                                            )
The City of Dickinson, North Dakota;        )
Kylan Klauzer; Jeremy Moser; Terry          )          Case No. 1:15-cv-72
Oestreich; and Does 1-10,                   )
                                            )
                    Defendants.             )
_____

        Before the Court is Defendant Terry Oestreich's "Motion for Summary Judgment" filed on

October 3, 2016.  See Docket No. 69.  The Plaintiff filed a response in opposition on October 31,

2016.  See Docket No. 81.  Oestreich filed a reply brief on November 21, 2016.  See Docket No.

90.  For the reasons explained below, Oestreich's motion for summary judgment is granted.


I.      **BACKGROUND**

        This case stems from a fire which occurred at Trinity High School in Dickinson, North

Dakota, on March 3, 2014.  The Plaintiff, Thomas Sander, brought this suit against the Defendants

because he believes he was wrongfully targeted as a suspect and subsequently arrested in

connection with the fire.  The Court has previously outlined the facts in this case in great detail in

its Order Granting Summary Judgment in favor of Defendants Kylan Klauzer and Jeremy Moser,

and will not reiterate them here.  See Docket No. 124.

On June 8, 2015, Sander commenced this suit against the Defendants[1] asserting nineteen separate causes of action.  See Docket No. 1.  Sander's complaint asserts several federal civil rights claims under 42 U.S.C. § 1983 against the Defendants, relating to alleged unconstitutional conduct in investigating, interrogating, and arresting Sander.  The complaint also asserts several causes of action against the City of Dickinson relating to its training and supervision of the named Defendants, and alleges several other state law causes of action against all of the Defendants, ranging from intentional infliction of emotional distress to defamation and deceit.


II.   **LEGAL ANALYSIS**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  Forrest v.

---

[1] Defendant Terry Oestreich, a former Dickinson Police Department official, has since been elected Sheriff of Stark County, North Dakota and is no longer employed by the Dickinson Police Department.

Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).  The non-moving party may not rely merely on allegations or denials; rather, it must set out specific facts showing a genuine issue for trial.  Id.

Oestreich moves for summary judgment on all of Sander's claims against him, arguing he is entitled to qualified immunity and state law immunity.  See Docket No. 70.  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.  Sheets v. Butera, 389 F.3d 772, 776 (8th Cir. 2004).  "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."  Littrell v. Franklin, 388 F.3d 578, 582 (8th Cir. 2004) (citation omitted).  The Supreme Court has construed qualified immunity protection to shield "all but the plainly incompetent or those who knowingly violate the law."  Id.  For qualified immunity to apply, a two-part inquiry is conducted:

(1) Whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and

(2) Whether the right was clearly established at the time of the deprivation.

Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009).

## A.  SANDER'S FEDERAL LAW CLAIMS UNDER 42 U.S.C. § 1983

In a 42 U.S.C. § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of other agents under a theory such as respondeat superior or supervisor liability.  Whitson v. Stone County Jail, 602 F.3d 920, 928 (8th Cir. 2010).  Further, the doctrine of qualified immunity also requires an individualized analysis as to each officer because a person may be held personally liable for a constitutional violation only if his own conduct

violated a clearly established constitutional right.  Manning v. Cotton, 862 F.3d 663, 668 (8th Cir.

2017).  Thus, Oestreich is only responsible or liable for his own behavior, individually.


### 1.  Substantive Due Process Claims:  Sander's 1st and 3rd Claims for Relief

Sander's complaint asserts he was not properly advised of the full *Miranda* warnings, he

was subjected to a coercive interrogation, and the officers recklessly failed to investigate other

leads.  Oestreich argues he is entitled to summary judgment on these claims because he did not

violate a fundamental right of Sander's and, even if he did, his conduct was not conscience-

shocking.  See Docket No. 70.

Oestreich argues the Eighth Circuit Court of Appeals has made it clear that defendants may

not be held liable under Section 1983 for the failure to properly Mirandize a suspect.  See Docket

No. 70, p. 6.  The Eighth Circuit has stated "a litigant cannot maintain an action under § 1983

based on a violation of the *Miranda* safeguards."  Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir.

2006).  Because the reading of *Miranda* warnings is a procedural safeguard rather than a right

arising out of the Fifth Amendment, the remedy for a *Miranda* violation is the exclusion from

evidence of any compelled self-incrimination, not a Section 1983 action.  Id.; Warren v. City of

Lincoln, Neb., 864 F.2d 1436, 1442 (8th Cir. 1989).  Even assuming that Sander's statements were

obtained in violation of *Miranda*, Section 1983 does not provide a remedy for a violation of

*Miranda*.  Sander's exclusive remedy would have been the suppression of his statements, and he

already received that remedy in the state district court.  See Hannon, 441 F.3d at 636.

Further, Sander's claim under Section 1983 relating to his Fifth Amendment right not to

incriminate himself fails as a matter of law because Sander did not proceed to a criminal trial.

Statements compelled by police interrogations obviously may not be used against a defendant at

4

trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs.  Winslow v. Smith, 696 F.3d 716, 731 n. 4 (8th Cir. 2012); Chavez v. Martinez, 538 U.S. 760, 767 (2003).  In Winslow, three suspects who pled guilty and one who pled no contest to murder charges could not bring claims under Section 1983 relating to their Fifth Amendment right not to incriminate themselves because those statements were never used at trial. 696 F.3d at 716, n. 4.  Like in *Winslow*, none of Sander's statements were used in a criminal trial.  In fact, Sander's confession was suppressed by the state district court, and the state criminal charges against him were ultimately dismissed.  A failure to give *Miranda* warnings, even if the police obtain an unwarned confession, cannot alone support Section 1983 liability.

In order to establish a violation of substantive due process rights, a plaintiff must show (1) that one or more of their fundamental constitutional rights were violated, and (2) that the conduct was shocking to the conscience.  Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007).  Whether conduct shocks the conscience is a question of law.  Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 980 (8th Cir. 2013).  The threshold question is whether the behavior of the governmental officer is so egregious and outrageous that it may fairly be said to shock the contemporary conscience.  Atkins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009).  Conduct intended to injure will generally rise to the conscience-shocking level, but negligent conducts falls beneath the threshold of constitutional due process.  Id.  The Eighth Circuit has held that investigators shock the conscience when they (1) attempt to coerce or threaten the criminal defendant; (2) purposefully ignore evidence of the defendant's innocence; or (3) systematically pressure to implicate the defendant despite contrary evidence.  Folkerts, 707 F.3d at 981.  However, an officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct.  Atkins, 588 F.3d at 1184.

"Fundamental to our system of justice is the principle that a person's rights are violated if police coerce an involuntary confession from him, truthful or otherwise, through physical or psychological methods designed to overbear his will." Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). Whether or not a confession is the involuntary product of coercion is judged by the totality of the circumstances—including an examination of both the conduct of the officers and the characteristics of the accused. Id. "[E]ven though the police use overreaching tactics such as the use of threats or violence, or the use of direct or indirect promises, such promises or threats will not render the confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self-determination." Sheets, 389 F.3d at 778. Courts are to review the totality of the circumstances, considering "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. at 779. However, it goes without saying that "the interrogation of a suspect will involve some pressure." Id.

Oestreich did not use violence or threats of violence to extract a confession from Sander during the March 4th interview. Although Sander noted in his deposition that the thought crossed his mind that Oestreich and Klauzer might resort to physical violence during the March 4th interview, Oestreich never touched Sander nor did he make threatening statements towards Sander. See Docket No. 53-8, p. 79. Sander asserts "[Oestreich] and Defendant Klauzer – two physicaly imposing law enforcement officers, one of whom was armed – pulled their chairs up around Sander, pinning him into the corner of the interrogation room." See Docket No. 81, p. 32. The Court acknowledges Oestreich and Klauzer were seated close to Sander, and Sander was essentially seated in the corner of the room during the interrogation. However, the interview took

place in a standard Dickinson police interview room, and Oestreich and Klauzer's proximity to Sander was not unduly coercive or threatening.

Sander asserts he was prevented from using the restroom during the March 4th interview. Upon a careful review of the video recording of the interview, the Court notes there was an approximately 42-minute delay after Sander initially requested to use the restroom. While the officers did indeed delay Sander's access to the restroom, the delay was not unreasonably lengthy and does not alone shock the conscience. Other courts have determined that similar delays do not shock the conscience. See Dowell v. Lincoln County, 927 F. Supp. 2d 741, 752 (E.D. Mo. 2013) (thirty-four minute delay in access to the restroom did not shock the conscience).

The statement to an accused that telling the truth "would be better for him" does not constitute an implied or express promise of leniency for the purpose of rendering his confession involuntary. Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001). Further, officers may elicit statements by claiming not to believe the accused's denials. Id. Interrogation tactics such as deception and raised voices also do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne. Id.

It goes without saying that an interrogation of a suspect will involve some pressure as the very purpose is to elicit a confession. Sheets, 389 F.3d at 779. However, in reviewing the totality of the circumstances, the Court finds that Oestreich's statements and actions during the March 4th interview did not shock the conscience. Courts are to consider the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. See id. The interrogation on March 4th took place in a Dickinson police interview room around 11:00 a.m., and Sander arrived voluntarily at Oestreich's request. The interview lasted approximately three and a half hours, and the first hour did not

7

consist of probing or accusatorial questioning.  No violence or physical threats were used.  Further, Sander is an extremely well-educated adult; he graduated from college, received his master's in education, and he was in a graduate program for theology at the time of the interview.  See Docket No. 65-9, pp. 4-5.  In reviewing the totality of the circumstances, the Court finds that the tactics employed by Oestreich during the March 4th interview do not rise to the level of malice or sadism resulting in the inhumane abuse of power that literally shocks the conscience.  See Sheets, 389 F.3d at 779.; Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002).  Therefore, the Court finds Oestreich is entitled to summary judgment on Sander's substantive due process claim against him.

Sander's complaint also alleges Oestreich recklessly failed to investigate other leads, namely failing to investigate James Gordon as a viable suspect.  Oestreich argues he is entitled to qualified immunity on this claim because there is no evidence that he failed to follow any lead or otherwise violate a clearly established right of Sander's.  The Eighth Circuit recognized a substantive due process cause of action for reckless investigation in *Wilson v. Lawrence County, Mo.*, where the Circuit identified the liberty interest at stake as the interest in obtaining fair criminal proceedings. 260 F.3d at 946.  The test for whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience.  Amrine v. Brooks, 522 F.3d 823, 833 (8th Cir. 2008).  Mere negligent failure to investigate does not violate substantive due process, nor do allegations of gross negligence give rise to a constitutional violation.  Id.

The Eighth Circuit has noted that even if police officers credit one individual's statement over another, and they are ultimately incorrect in their conclusions, qualified immunity protects officers from such types of "mistaken judgments."  Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 672 (8th Cir. 2007).  Oestreich argues that the decision to discredit Gordon's "confession" was not entirely unreasonable and does not prove that officers conducted a reckless

8

investigation. <u>See</u> Docket No. 70, p. 10. The Court agrees. Further, Sander has not demonstrated that Oestreich's conduct during the investigation into the Trinity fire "shocked the conscience." Therefore, the Court finds that Oestreich is entitled to qualified immunity on this claim.

### 2. **Conspiracy to Violate Civil Rights – Sander's 5th Claim for Relief**

Sander's complaint asserts a claim against Oestreich for conspiracy to violate his civil rights. <u>See</u> Docket No. 1, p. 11. To prove a 42 U.S.C. § 1983 conspiracy claim, Sander must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. <u>White v. McKinley</u>, 519 F.3d 806, 814 (8th Cir. 2008). Oestreich argues Sander cannot show he was deprived of a constitutional right, and Sander was not injured by the officers' failure to provide the full *Miranda* warnings because his confession was suppressed by the state district court. <u>See</u> Docket No. 70. The Court agrees. As discussed above, the officers' failure to provide full *Miranda* warnings to Sander during the March 4th interview is not a constitutional violation and is not independently actionable under Section 1983. <u>See</u> <u>Hannon</u>, 441 F.3d at 636. Because Sander cannot show he was deprived of a constitutional right or that he was injured, Oestreich is entitled to summary judgment on Sander's conspiracy claim against him.

### 3. **Failure to Preserve Exculpatory Evidence—Sander's 2nd and 12th Claim for Relief**

Oestreich argues he is entitled to summary judgment on Sander's allegations that he suppressed or failed to disclose exculpatory evidence. An investigating officer's failure to preserve evidence potentially useful to the accused or his failure to disclose such evidence does

not constitute a denial of due process in the absence of bad faith.   White, 519 F.3d at 814.

Consequently, to be viable, Sander's claim must allege bad faith to implicate a clearly established

right under *Brady*.   Id.   Even assuming that Oestreich failed to disclose exculpatory evidence, the

Court finds there was no *Brady* violation because Sander was not convicted.   See Livers v.

Schenck, 700 F.3d 340, 359 (8th Cir. 2012).   In *Livers*, the Eighth Circuit determined the

investigating officers were entitled to qualified immunity on pretrial detainees' Section 1983 claim

alleging the officers failed to disclose exculpatory evidence in violation of their due process rights,

since a pretrial right to disclosure of such evidence, if it existed at all, was not clearly established.

700 F.3d at 359-60.   Because Sander was not convicted, he did not suffer the effects of an unfair

trial, and his claim against Oestreich for failure to preserve exculpatory evidence fails as a matter

of law.   See id.


### 4. **False Arrest and False Imprisonment – Sander's 17th Claim for Relief**

Underlying many of Sander's federal and state law claims is his assertion that he was

detained on March 4th without probable cause. Oestreich argues he is entitled to summary

judgment because the officers had sufficient probable cause to arrest Sander.   See Docket No. 70.

A false arrest claim under Section 1983 fails as a matter of law where the officer had

probable cause to make the arrest.   Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001).

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause,

and an officer is entitled to qualified immunity if there is at least "arguable probable cause."

Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011).   An officer has probable cause to make

a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to

lead a reasonable person to believe that the defendant has committed or is committing an offense.

Id. at 523.  Arguable probable cause exists even when an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is "objectively reasonable."  Id.  An arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.  Devenpeck v. Alford, 543 U.S. 146, 593 (2004).  Although the probable cause standard allows room for reasonable mistakes by a reasonable person, the qualified immunity standard protects "all but the plainly incompetent or those who knowingly violate the law."  Greenman v. Jessen, 787 F.3d 882, 888 (8th Cir. 2015).

Oestreich argues there was sufficient probable cause to arrest Sander and sufficient circumstantial evidence to indicate Sander was likely the individual who started the fire, including: (1) Sander had a motive as he had recently been told his contract was not being renewed at the end of the school year; (2) Sander had access to the school, the main office, the vault, and his office; (3) Sander had an opportunity to start the fire as he was working late at the school in the main office where the vault is located the evening before the fire, and he left the school shortly before Storey heard the fire alarm; (4) Sander was one of the few people who had the combination to the vault and knew how to open it; and (5) Sander found the blue sticky note on his laptop which indicated the fire was intentionally set.  See Docket No. 70.

Given all these facts and the absence of viable alternative suspects with comparable means, motive, and opportunity at the time of the interview, Oestreich argues there was arguable probable cause to arrest Sander when he was detained during the March 4th interview.  Sander's response argues that critical details in his confession were "inconsistent with the manner in which the fire was actually started."  See Docket No. 81, p. 11.  However, Sander's argument is misplaced.  Other facts uncovered later in the investigation which may diminish probable cause, such as a potential new suspect and inconsistencies in witness statements, do not undermine the analysis because the

question regarding probable cause involves what the officers knew <u>at the time</u> on March 4th.  The Court finds there was arguable probable cause to arrest Sander when he was detained on March 4th.  Further, Oestreich is entitled to qualified immunity if there is at least "arguable probable cause."  <u>See</u> <u>Borgman</u>, 646 F.3d at 522-23.  Accordingly, Sander's claim against Oestreich for false arrest and false imprisonment under Section 1983 fails as a matter of law.

Sander's complaint also asserts a claim for "Deliberate Fabrication and Material Omissions in the Arrest Warrant Affidavit."  <u>See</u> Docket No. 1, pp. 22-23.  Sander's complaint does not specify what the deliberate fabrication or material omissions in the arrest warrant affidavit were.  Oestreich argues he is entitled to summary judgment in his favor on this claim because Oestreich did not prepare or sign the arrest warrant affidavit and, even if he did, he is entitled to qualified immunity.  <u>See</u> <u>Bagby v. Brodhaver</u>, 98 F.3d 1096, 1099 (8th Cir. 1996) (qualified immunity is appropriate if defendant has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause to arrest or search).  Because the Court has already previously determined there was probable cause to arrest Sander on March 4th, even without Sander's confession, Oestreich is entitled to qualified immunity.  Sander's claim against him fails as a matter of law.

**B.  <u>SANDER'S STATE LAW CLAIMS</u>**

**1.  <u>False Arrest and False Imprisonment—Sander's 6th Claim for Relief</u>**

Oestreich argues probable cause is a defense to a false arrest claim, the officers had sufficient probable cause to arrest Sander, and he is entitled to summary judgment in his favor on Sander's state law claim for false arrest and false imprisonment.  <u>See</u> Docket No. 70, pp. 17-18.

A police officer who has probable cause to believe a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed.  See Kurtz, 245 F.3d at 758.  A plaintiff is not entitled to recover if the arrest is supported by proper legal authority.  See Copper v. City of Fargo, 905 F. Supp. 680, 702 (D.N.D. 1994).  Further, probable cause may serve as a defense if it validates the arrest itself.  Id. The North Dakota Supreme Court has held that when determining whether an officer had probable cause to arrest a suspect, the Court applies a totality-of-the-circumstances standard and reviews the facts and circumstances known by the officer.  State v. Berger, 2004 ND 151, ¶ 11, 683 N.W2.d 897.  Whether probable cause exists is a question of law.  Id.  In order to establish probable cause, the officer does not have to possess knowledge of facts sufficient to establish guilt; all that is required is knowledge that would furnish a prudent person with reasonable grounds for believing a violation has occurred.  Id.  Even though conduct may have an innocent explanation, probable cause "is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers."  Id.  As discussed above, the Court has previously determined there was sufficient probable cause to arrest Sander; therefore, Sander's state law claim against Oestreich for false arrest and false imprisonment fails as a matter of law.

Further, Oestreich also argues he is entitled to state law immunity.  See Docket No. 70, p. 29.  Section 32-12.1-03(3)(c) of the North Dakota Century Code sets forth the discretionary function exception to liability of a political subdivision or political subdivision employee.  Section 32-12.1-03, N.D.C.C., states, in pertinent part:  "A political subdivision or a political subdivision employee may not be held liable under this chapter for . . . [t]he decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion is abused . . ."  The North Dakota Supreme Court has interpreted this subsection to provide political

13

subdivisions and their employees immunity from liability for allegations of negligence in the exercise of a discretionary function. <u>Copper</u>, 905 F. Supp. at 702; <u>see</u> <u>Sande v. City of Grand Forks</u>, 269 N.W.2d 93, 98 (N.D. 1978); <u>McLain v. Midway Township</u>, 326 N.W.2d 196, 199 (N.D. 1982). Therefore, Oestreich is immune from liability for Sander's state law claims for false arrest and false imprisonment, regardless of whether he was negligent or whether he exercised due care, provided that he can demonstrate that the decision to detain or arrest Sander was a discretionary function. "There is a substantial amount of independent judgment required to make a decision to arrest or to conclude whether probable cause exists." <u>Copper</u>, 905 F. Supp. at 702; <u>see</u> <u>Richmond v. Haney</u>, 480 N.W.2d 751, 759 (N.D. 1992). The Court finds Oestreich was exercising highly discretionary functions in the investigation and arrest of Sander, and he is entitled to state law immunity as a matter of law, and therefore summary judgment on these claims.

### 2. <u>Malicious Prosecution – Sander's 7th Claim for Relief</u>

With respect to Sander's state law malicious prosecution claim against Oestreich, the Court finds that Sander has not established a triable issue of fact on every essential element of the claim. In order to maintain an action for malicious prosecution, one must establish, at a minimum, the following elements:

1. Institution of a criminal proceeding by the defendant against the plaintiff;

2. Termination of the proceeding in favor of the accused;

3. Absence of probable cause for the proceeding; and

4. Malice.

<u>Kummer v. City of Fargo</u>, 516 N.W.2d 294, 298 (N.D. 1994); <u>Richmond</u>, 480 N.W.2d at 755.

Even assuming that Sander could establish Oestreich had instituted a criminal proceeding against him and that it terminated in his favor, Sander must still establish the absence of probable cause and malice.  As the Court has already previously addressed, probable cause was present when prosecution against Sander was initiated.  Further, regarding the element of malice, the North Dakota Supreme Court has stated, "Overzealous police techniques which lead to a successful defense do not, without more, constitute malice or ulterior purpose sufficient to support a tort claim."  Kummer, 516 N.W.2d at 298.  Absent some evidence that Oestreich was driven by some motive other than to bring an offender to justice, there can be no claim of abuse of process or malicious prosecution.  Id.

Even if Oestreich's actions could fairly be said to constitute overzealous police work, Sander's state law claim for malicious prosecution against him must fail because there is no evidence in the record to support a jury finding of an ulterior motive beyond Sander's conclusory allegations and unsupported theory that Oestreich had a personal bias against Sander based on Oestreich's daughter's prior experiences and interactions with Sander.  Oestreich also argues he is entitled to state law immunity, under N.D.C.C. § 32-12.1-03, as the decisions he made during the investigation were highly discretionary.  See Copper, 905 F. Supp. at 702; see Sande v. City of Grand Forks, 269 N.W.2d 93, 98 (N.D. 1978); McLain v. Midway Township, 326 N.W.2d 196, 199 (N.D. 1982).  The Court agrees.  Sander's state law claim of malicious prosecution against Oestreich fails as a matter of law.

### 3. Intentional Infliction of Emotional Distress—Sander's 8th Claim for Relief

Oestreich asserts he is entitled to summary judgment on Sander's state law claim for intentional infliction of emotional distress because Oestreich's conduct was not "extreme and

15

outrageous" as a matter of law.  The elements of a tort action for the intentional infliction of emotional distress are extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress.  Kautzman v. McDonald, 2001 ND 20, ¶ 18, 621 N.W.2d 871.  Conduct which qualifies as extreme and outrageous is limited to conduct which exceeds "all possible bounds of decency" and which "would arouse resentment against the actor and lead to an exclamation of 'Outrageous' by an average member of the community."  Id.  The court must initially decide whether the alleged conduct may reasonably be regarded as "extreme and outrageous."  Id.

Sander's complaint argues the Defendants engaged in extreme and outrageous conduct by "bullying, coercing, and intimidating" Sander into making a "false confession" and persisting in prosecuting Sander "when another individual had admitted to starting the fire."  See Docket No. 1, p. 13.  Again, Sander's complaint refers to the "Defendant Police Officers" collectively, and does not state which particular officer engaged in certain conduct.  See Docket No. 1, p. 13-14.  However, many of Sander's allegations of extreme and outrageous conduct appear to relate to the March 4th interview.  Oestreich had legitimate law enforcement objectives in interviewing Sander as he was attempting to determine the identity of a possible arsonist of a local high school.  The Court finds that an average member of the community would not exclaim "Outrageous!" upon learning of Oestreich's actions in this case.  As discussed above with respect to the constitutionality of the March 4th interview, the interview did not deviate from practices and tactics commonly employed in police interrogations.  Further, as discussed above, Oestreich did not violate Sander's constitutional rights by failing to investigate other potential suspects.  The Court finds as a matter of law that the conduct at issue cannot be said to exceed "all possible bounds of decency" or rise to the level of "extreme and outrageous conduct" as required under North Dakota law.  Kautzman,

16

2001 ND 20, ¶ 18.   Therefore, summary judgment on Sander's claim of intentional infliction of emotional distress against Oestreich is appropriate.

### 4.   __Abuse of Process--Sander's 9th Claim for Relief__

The Court finds Sander's state law abuse of process claim against Oestreich fails as a matter of law.   The tort of abuse of process involves an individual who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed. Kummer, 516 N.W.2d at 297.   The essential elements of abuse of process include:   (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.   Id.   The North Dakota Supreme Court has noted that the improper purpose usually "takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself."   Id.   As noted above regarding the malicious process claim, Sander has failed to point to evidence in the record to support a finding that Oestreich had an ulterior purpose or motive, other than bringing an offender to justice or that he used any legal process to gain a collateral advantage over Sander.   Sander makes a point to note that Oestreich was familiar with Sander and his behavior, due to the fact that Oestreich's daughter had previously worked with Sander, and Sander concludes that Oestreich's investigation was colored by a bias against Sander. However, Sander has failed to point to anything in the record which demonstrates or even suggests that Oestreich acted out a personal animosity or bias against Sander.   Accordingly, Sander's state law claim of abuse of process against Oestreich fails as a matter of law, and Oestreich is entitled to summary judgment in his favor.

**5.   Gross Negligence and Willful Misconduct—Sander's 10th & 13th Claims for Relief**

Sander's complaint alleges claims of "gross negligence" and "willful misconduct" against Oestreich.  See Docket No. 1, pp. 15-16, 18-19.  The Court has already concluded that a reasonable officer could have believed there was sufficient probable cause to arrest Sander on March 4th, and that doing so was a discretionary act.  If a reasonable officer could have believed that the arrest was lawful, their actions cannot constitute gross negligence or willful misconduct.  See Wishnatsky v. Bergquist, 550 N.W.2d 394, 403 (N.D. 1996).  The Court finds that Sander's state law claims for gross negligence and willful misconduct against Oestreich fail as a matter of law, and summary judgment is appropriate.

**6.   North Dakota Constitution Claim—Sander's 11th Claim for Relief**

Sander asserts a claim for relief under Article 1, Section 1 of the North Dakota State Constitution.  See Docket No. 1, p. 16.  Article 1, Section 1 of the North Dakota Constitution states:

> All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness; and to keep and bear arms for the defense of their person, family, property, and the state, and for lawful hunting, recreational, and other lawful purposes, which shall not be infringed.

Sander has failed to point to any case law to support his claim for a private right of action under the state constitution, and this Court will not take the extraordinary step of inferring one.  The Court finds Oestreich is entitled to summary judgment as a matter of law on Sander's claim against him under Article 1, Section 1 of the North Dakota Constitution.

18

7. **Deceit—Sander's 14th Claim for Relief**

Sander's complaint alleges a claim of deceit against Oestreich and outlines various alleged false statements the officers made to Sander.  See Docket No. 1, p. 19.  Again, Sander's complaint does not distinguish which specific officer made which alleged false statements; rather he refers to them collectively as "Defendant Police Officers" or "Defendants."  See Docket No. 1, p. 19.  However, the statements Sander refers to in his complaint were presumably made during the March 4th interview.

"One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers."  N.D.C.C. § 9-10-03.  Deceit under N.D.C.C. § 9-10-02 applies where there is no contract between the parties.  Erickson v. Brown, 2008 ND 57, ¶ 24, 747 N.W.2d 34.  Deceit is defined as:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise made without any intention of performing.

N.D.C.C. § 9-10-02.

The Court finds that Sander has failed to establish a causal connection between the alleged deception and the harm he alleged he sustained.  See Grandbois and Grandbois, Inc. v. City of Watford City, 2004 ND 162, ¶ 24, 685 N.W.2d 129 (holding police officers' deception regarding misrepresentations on employment applications for bartender positions was insufficient to prove a causal connection between the omission and the bar's subsequent financial losses following

19

undercover officers' multiple drug arrests).  The causal connection between the alleged deception, namely the misleading and lying about the evidence in the case, and the ultimate harm which Sander alleges, being prosecuted, is lacking because there was arguable probable cause to arrest Sander, independent from his confession.  Further, Sander failed to identify any authority for holding a law enforcement officer liable under that tort for conduct during an official police interrogation.

### 8. __Defamation—Sander's 18th Claim for Relief__

Sander brought a claim of defamation against Oestreich, asserting "Defendant Officers and Detectives made false and unprivileged statements indicating that Tom Sander was guilty of starting the Trinity Fire and that he would be convicted and punished for that crime."  <u>See</u> Docket No. 1, p. 24.  It is unclear which alleged statements Sander believes are actionable, or which statements were made by Oestreich,.  Again, Sander's complaint does not distinguish which specific defendant made such statements, rather he refers to them collectively as "Defendant Police Officers" or "Detectives."  <u>See</u> Docket No. 1, p. 24.

To be defamatory, a statement must be false and unprivileged. <u>See</u> N.D.C.C. § 14-02-03; N.D.C.C. § 14-02-04; <u>Mr. G's Turtle Mountain Lodge, Inc. v. Roland Tp.</u>, 2002 ND 140, ¶ 33, 651 N.W.2d 625.  Any statement allegedly made regarding Sander being charged in connection with the Trinity fire could not support liability because it was not false, as Sander was, in fact, charged.  The Court finds that Oestreich is entitled to summary judgment as a matter of law on Sander's defamation claim.

III.   **CONCLUSION**

After carefully reviewing the entire record and for the reasons set forth above, the Court

**GRANTS** Defendant Oestreich's "Motion for Summary Judgment" (Docket No. 69).

**IT IS SO ORDERED**.

Dated this 5th day of February, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court